## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Waste Management of Minnesota, Inc.,                Civil No. 06-1563 (DWF/AJB)

                    Plaintiff,

                                                      **MEMORANDUM**
                                                      **OPINION AND ORDER**

Transcontinental Insurance Company,

                    Defendant.

_____

Jack Y. Perry, Esq., Jesse R. Orman, Esq., Thomas J. Basting, Jr., Esq., and Lauren E. Lonergan, Esq., Briggs & Morgan, PA, counsel for Plaintiff.

Livia E. Babock, Esq. and Robert E. Salmon, Esq., Meagher & Geer, PLLP, counsel for Defendant.

_____

       This is a declaratory judgment action brought by Waste Management of

Minnesota, Inc. ("Waste Management") against its insurer, Transcontinental Insurance

Company ("Transcontinental").  This matter came before the Court on July 28, 2006,

pursuant to Waste Management's Motion for Partial Summary Judgment and

Transcontinental's Motion for Summary Judgment.  For the reasons set forth below, the

Court grants Waste Management's motion and grants in part and denies in part

Transcontinental's motion.

**BACKGROUND**

Based on the parties' stipulation, the Court accepts the following facts as true for the purposes of this motion.  On November 2, 1999, Chad Trenhaile was driving a tractor-trailer truck when it collided with a vehicle, which was occupied by Brian and Ellen Ross.  At that time, the truck contained garbage, which had been loaded by Waste Management.  Trenhaile and the Rosses sustained serious injuries.  C & D Trucking, Inc. ("C & D") and Donovan Stumo owned the tractor portion of the truck, and Trenhaile was an employee of C & D.  C & D had leased the tractor portion to Ship-It Express, Inc. ("Ship-It"), which had contracted with Waste Management to transport the garbage. C & D, Stumo, and Ship-It are collectively referred to as the "Trucking Defendants."

*Ross Litigation*

In 2001, the Rosses sued the Trucking Defendants and Waste Management in Hennepin County Court, asserting claims of negligence related to Trenhaile's driving and to the loading of the trailer.  At the time of the accident, Waste Management and its parent company had an automobile liability insurance policy with limits of $1 million per accident through Reliance Insurance Company ("Reliance") and a commercial umbrella policy (the "Transcontinental Policy" or the "Policy") with limits of $25 million per accident through Transcontinental.  While the *Ross* litigation was pending, however, Reliance became insolvent, and pursuant to Minn. Stat. § 60C.01, *et seq*., the Minnesota Insurance Guaranty Association (MIGA) assumed responsibility for Waste Management's defense in the *Ross* litigation after Waste Management filed a claim with MIGA.

2

The parties in *Ross* agreed to arbitrate their dispute.  An arbitrator determined that Trenhaile and Waste Management were both at 50% fault for the accident and found that Brian Ross's damages were approximately $2.5 million and Ellen Ross's damages were approximately $500,000.  After the arbitration award, the parties and their respective insurance carriers filed various procedural and substantive motions in Hennepin County Court relating to the arbitration award.   In an Order dated February 27, 2004, the Hennepin County Court confirmed the arbitrator's award, concluding that the Rosses were entitled to judgment in the amount of approximately $3 million against Trenhaile and Waste Management and that the priority of coverage for the accident was Ship-It's insurer, MIGA, and Transcontinental.  At some point, Ship-It, through its insurance carrier, paid approximately $700,000 to the Rosses.  Therefore, there was a remaining judgment of $2.3 million against Waste Management and Trenhaile.

The remaining parties involved in the *Ross* litigation filed an appeal relating to the February 27, 2004 Order with the Minnesota Court of Appeals.  After briefing and oral argument, but prior to any decision, the Rosses, their insurance company, Waste Management, MIGA, and Transcontinental entered into a settlement agreement concerning payment of the remaining $2.3 million of the judgment.  Trenhaile was not a party to the settlement agreement.  As a result of the settlement, the appeal was dismissed on March 14, 2005, and the settlement agreement was fully executed on May 10, 2005.

Under that agreement, the parties agreed to satisfy the unpaid portion of the

judgment as follows:

| | |
|---|---|
| Waste Management | $     150,000 |
| Transcontinental | $   1,320,000 |
| Rosses' Insurance | $     250,000 |
| MIGA | $     555,000 |
| Rosses' Judgment Reduction | $       30,000 |
| Total | $   2,305,000 |

The settlement agreement also provided, among other things, that the Rosses would

"execute a satisfaction of judgment . . . in favor of [the Rosses' insurance], Waste

Management, MIGA, and Transcontinental" and that "the Parties do not admit any

liability or coverage whatsoever and nothing contained in [the settlement agreement]

shall be construed as any such admission or have any precedential value." Later, MIGA,

Transcontinental, the Rosses' insurance company, and Waste Management filed a

stipulation of dismissal of their claims.   There was no stipulation of dismissal of the

Rosses' claims against Waste Management.  Rather, the Rosses filed full satisfactions of

judgments on July 5, 2005.

*Trenhaile* Litigation

In August 2004, while *Ross* was pending, Trenhaile filed suit in Hennepin County

Court against Waste Management, alleging claims of negligence relating to Waste

Management's loading of the trailer Trenhaile was driving when he collided with the

Rosses' vehicle.  Waste Management denied liability and tendered defense and indemnity

of *Trenhaile* to Transcontinental.[1]   Transcontinental denied the initial tender.  After the satisfaction of the *Ross* judgment, Waste Management re-tendered *Trenhaile* to Transcontinental, who requested some more information from Waste Management. Later, Transcontinental denied the re-tender.

*Present Dispute*

After Transcontinental denied the re-tender, Waste Management filed suit in this Court with a three-count declaratory judgment action, seeking:  (1) a declaration that Transcontinental must pay any final judgment in the *Trenhaile* litigation; (2) a declaration that Waste Management is not required to defend itself in *Trenhaile*; and (3) a declaration (in the form of an unjust enrichment claim) that Transcontinental is liable for Waste Management's defense costs to date.  Waste Management now moves for summary judgment on Counts I and II, and Transcontinental moves for summary judgment on all counts.

## DISCUSSION

### I.    Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v.*

---

[1]    Waste Management was not entitled to coverage from MIGA for the *Trenhaile* litigation.

*Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996).  As the United States

Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

whole, which are designed 'to secure the just, speedy, and inexpensive determination of

every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting

Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law.  *Enterprise Bank*,

92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in

the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d

953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary

judgment may not rest upon mere allegations or denials but must set forth specific facts

showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 256 (1986).

## II.   Contract Construction

A court applies general principles of contract interpretation in construing

insurance contracts.  *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249

(Minn. 1998).[2]  The correct interpretation of a clause in an insurance policy is a question

---

[2]      The Court applies the choice of law of the forum state in diversity cases.  *U.S. Fire
Ins. Co. v. Kresser Motor Serv., Inc.*, 26 F.3d 91, 94 (8th Cir. 1994).  Before turning to a
choice-of-law analysis, however, a court must first find if a true conflict exists.  *Leonards
v. Southern Farm Bureau Cas. Ins. Co.,* 279 F.3d 611, 612 (8th Cir. 2002) (finding it
unnecessary to resolve choice-of-law conflict when relevant legal issues were the same in
(Footnote Continued on Next Page)

of law. *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn. 1994). Words in insurance

contacts are given their plain and ordinary meaning. *Am. Family Ins. Co. v. Walser*, 628

N.W.2d 605, 609 (Minn. 2001). A court must consider the policy and its exclusions as a

whole, and "the terms will not be so strictly construed as to lead to a harsh or absurd

result." *Employers Mut. Liab. Ins. Co. v. Eagles Lodge*, 165 N.W.2d 554, 556 (Minn.

1969). Any ambiguity in the language of an insurance policy must be resolved against

the insurer and in accordance with the reasonable expectations of the insured. *Columbia*

*Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 35 (Minn. 1979).

## III.   Transcontinental Must Indemnify Waste Management in *Trenhaile*

### A.   Applicable Provisions of the Transcontinental Policy

The Transcontinental Policy provides, in relevant part, that Transcontinental will

"pay on behalf of the insured all sums that the insured becomes legally obligated to pay

as 'ultimate net loss' . . . caused by an 'incident'[3] which takes place during the policy

period." (Policy at I.1.) Ultimate net loss is defined as:

> "Ultimate net loss" means the actual damages the insured is legally
> obligated to pay, either through:
>
> (1)    final adjudication on the merits; or

---

(Footnote Continued from Previous Page)
both states at issue). Here, the parties agree that Minnesota law should apply because no
true conflict exists between the law of Minnesota (place of the accident) and Texas (place
the insurance contract was issued). (Waste Management's S.J. Mem. at 4;
Transcontinental's Opp. Mem. at 4). Therefore, the Court will apply Minnesota law.

[3]    The parties agree that the November 1999 accident was an incident covered under
the Policy.

(2)     through compromise settlement with our written consent or
        direction;

because of "incident(s)" covered by this policy.

(*Id.*, V.18a.)  Transcontinental's liability is limited under the Policy.  Specifically, the

Policy provides:

We shall only be liable for the "ultimate net loss" in excess of:

a.     The applicable limits of "scheduled underlying insurance" in Item 5.
       of the Declarations, for "incidents" covered by "scheduled
       underlying insurance", plus the limits of any "unscheduled
       underlying insurance" which also provides coverage for such
       "incidents;"

                              * * *

but only up to the amount of our limits of liability in Item 3. of the
Declarations, because of a single "incident."

(*Id.*, III.3a.)  The Policy requires Waste Management to maintain underlying insurance.

While this policy is in force you agree that the policies listed in the
Declarations . . . shall be maintained . . . in full effect during the term of
this policy; except reduction or exhaustion . . . provided that such reduction
or exhaustion is solely the result of "incidents" taking place during this
policy period, and not before.  If you fail to maintain "scheduled underlying
insurance," this condition shall not invalidate this policy.  However, in the
event of such failure, we will only be liable to the same extent as if you had
complied with this condition.

(*Id.*, IV.11.)  Scheduled underlying insurance is defined as the "insurance policies listed

in the Schedule of Underlying Insurance."  (*Id.*, V.17.)   Underlying insurer is defined as

"an insurer whose policy covers an 'incident' also covered by this policy  . . . [including]

all insurers providing (a) unscheduled underlying insurance and (b) scheduled underlying

insurance.  (*Id.*, V.19.)   Unscheduled underlying insurance is defined as "insurance

policies available to an insured whether (1) primary; (2) excess; (3) excess-contingent; (4) otherwise; except the policies listed in the Schedule of Underlying Insurance."  (*Id.*, V.20.)

Here, the Reliance policy with the $1 million limit is the only relevant policy listed on the Schedule of Underlying Insurance.  Reliance, however, became insolvent during the *Ross* litigation.  In the case of an insolvent scheduled underlying insurer, the Transcontinental Policy provides:

> Bankruptcy, rehabilitation, receivership, liquidation or other financial impairment of you or an "underlying insurer" shall neither relieve nor increase any of our obligations under this policy.  In the event there is diminished recovery or no recovery available to you as a result of such financial impairment of an insurer providing "scheduled underlying insurance," the coverage under this policy shall apply only in excess of the limits of liability stated in the "scheduled underlying insurance".  Under no circumstances shall we be required to drop down and replace the limits of liability, or assume the obligations of a financially impaired insurer.

(*Id.*, IV.1.)

## B.     Indemnification Discussion

In Count I, Waste Management seeks a declaration that it is entitled to full indemnity for any judgment against it in *Trenhaile*.  Waste Management contends that it is entitled to this declaration because Transcontinental's obligations under the Policy were triggered when the limits of Waste Management's scheduled underlying insurance were exhausted in *Ross*.

The parties agree that Waste Management had scheduled underlying insurance of $1 million from Reliance and that therefore, under the terms of the Policy, Transcontinental is liable once Waste Management's liability for a single incident

exceeds $1 million.  The parties also agree that both *Ross* and *Trenhaile* involve a single incident.  The dispute here is whether Waste Management's liability for the November accident has already exceeded $1 million.

Waste Management asserts that the $1 million limit was met in *Ross* when the $2.3 million judgment against it and Trenhaile was entered;[4] therefore, Waste Management contends that Transcontinental must pay first dollar coverage for any recovery in *Trenhaile*.  In response, Transcontinental argues that its liability is triggered only after the applicable limits of the scheduled underlying insurance have been actually exhausted by Reliance and/or Waste Management.  Because Waste Management only paid $150,000 in the *Ross* settlement, Transcontinental contends that its liability has not yet been triggered.

Transcontinental's argument ignores the Policy's use of the words "limits," "to pay," and "either."  In essence, Transcontinental argues that the phrase "in excess of the applicable limits" actually means "in excess of actual payment by Waste Management of the applicable limits" and that the phrase "either" actually means "only a settlement if there was a settlement."  Transcontinental's argument is not supported by a plain reading of the Policy that consistently refers to amounts payable and applicable limits of liability and under which liability attaches after there is a final adjudication on the merits or a compromise settlement.  (*See, e.g.,* Policy at I.1, III.3, IV.1, IV.11, and V.18).  Therefore, the Court rejects Transcontinental's arguments.  Under a plain reading of the

---

[4]     The Court's analysis for this motion is not changed by the fact that Trenhaile was found jointly and severally liable for the $2.3 million judgment.

unambiguous sections I.1, III.3 and V.18 of the Policy, the Court concludes that Transcontinental is liable for all sums in excess of the $1 million Reliance policy limits that Waste Management becomes legally obligated to pay either through: (a) a final adjudication on the merits or (b) a compromise settlement.

The next issue involves determining whether: (1) Waste Management has been found legally obligated to pay, either through a final adjudication on the merits or a compromise settlement, sums in excess of $1 million and (2) whether those sums have been exhausted. Waste Management asserts that there was a final adjudication on the merits either when the $2.3 million judgment in *Ross* was docketed in Hennepin County Court on February 27, 2004, and no supersedeas bond was filed or when the judgment became final for *res judicata* purposes on March 14, 2005, when the appeal was dismissed. It explains that the settlement simply represents an agreement of how to fund the judgment.

In response, Transcontinental asserts that it is the final settlement, not the judgment, which determines Waste Management's ultimate net loss and whether Transcontinental's indemnity obligations have attached. Because Waste Management only paid $150,000 in the *Ross* settlement, Transcontinental asserts that it has no duty to indemnify Waste Management in *Trenhaile* until Waste Management expends another $850,000.

The Policy does not define final adjudication or compromise settlement, and either is sufficient to trigger Transcontinental's liability. (Policy at V.18a.) The *Ross* settlement, together with the stipulation of dismissal and the Ross's satisfaction of

judgment, makes it difficult to determine whether there was a final adjudication on the merits or a compromise settlement—or both—in *Ross*. This is especially troubling, given that both Waste Management and Transcontinental participated in drafting the *Ross* settlement, which occurred after *Trenhaile* was commenced and therefore should have contemplated the present dispute. Nevertheless, because the Court determines that the $1 million limit was exhausted in the *Ross* settlement, it need not determine whether there was a final adjudication on the merits.[5]

Transcontinental's argument that only Waste Management's $150,000 payment should be considered is without merit. As discussed above, the Policy is triggered when the limits of the Reliance policy become payable—not paid—as a result of Waste Management's liability. If Reliance had been solvent, Reliance would have paid $1 million in *Ross*, and Transcontinental would have paid the remaining $1.3 million. As a result of Reliance's insolvency, however, Waste Management, MIGA, the Rosses, the Rosses' insurance, and Transcontinental entered into a settlement agreement that exhausted the limits of the Reliance policy. Under that settlement, Transcontinental paid the amount it would have paid—$1.3 million—had Reliance been solvent. Transcontinental liability does not change simply because Reliance was insolvent. (Policy at IV.1.)

---

[5]     If there was a final adjudication on the merits, Transcontinental does not dispute that the $1 million limit was met when, after Ship-It made its payment, a judgment of $2.3 million against Waste Management and Trenhaile remained.

It is immaterial that neither Waste Management nor Reliance paid the entire

$1 million sum.  Rather, the key is whether the $1 million limit was exhausted as a result

of Waste Management's liability.  Specifically, MIGA made its payment as a result of

Reliance's insolvency after Waste Management was found to be liable.  *See Goodyear*

*Tire & Rubber Co. v. Dynamic Air, Inc.*, 702 N.W.2d 237, 241 (Minn. 2005) (explaining

that the MIGA Act should be liberally construed and that MIGA is the "deemed insurer

to the extent of its obligations on the covered claims").   The Rosses' insurance made its

payment for Waste Management's liability under an uninsured motorist policy, which

was triggered only after the Rosses became entitled to collect damages, but were unable

to do so because of Reliance's insolvency, as a result of Waste Management's liability.[6]

Finally, nothing in the Policy prevents using the Rosses' $30,000 reduction and

Transcontinental's $15,000 payment to exhaust the $1 million limits.  *Cf., Stargatt v. The*

*Fidelity & Cas. Co. of New York*, 67 F.R.D. 689, 691 (D. Del. 1975) (concluding plaintiff

did not actually need to collect full amount of underlying insurance to exhaust limits);

*Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 38 Cal. Rptr. 3d 716, 736 (Cal. Ct.

App. 2006) (same).  Indeed, public policy dictates such a result, absent specific language

in an insurance contract requiring actual collection of the underlying amount of the

primary insurance.  *Zeig v. Massachusetts Bonding & Ins. Co.*, 23 F.2d 665, 666 (2d Cir.

1928).  In sum, Transcontinental's obligations under the Policy were triggered when the

---

[6]     Under the Transcontinental Policy, the Rosses' insurance is not considered
unscheduled underlying insurance because it was not available to Waste Management.
(Policy at V.20a.)

$1 million limit was exhausted in the *Ross* settlement.  Therefore, Waste Management is entitled to summary judgment on Count I.

## IV.   Transcontinental Must Defend Waste Management in *Trenhaile*

### A.   Applicable Provision of the Transcontinental Policy

The Transcontinental Policy requires Waste Management to provide Transcontinental with written notice of any suit brought against Waste Management that is likely to involve the Transcontinental Policy.  (Policy at IV, 2.)  The parties agree that Waste Management provided Transcontinental with notification of *Trenhaile*.

The Policy further provides, in relevant part:

> If a claim or "suit" alleges damages covered by underlying policies and the obligation of all "underlying insurers" either to:
>
> a.      investigate and defend the insured; or
> b.      pay the cost of such investigation and defense;
>
> ceases solely through exhaustion of all underlying limits of liability through payment of a combination of covered expenses, settlements or judgments for "incidents" taking place during our policy period, then we will either:
>
> a.      assume the investigation and defense of the insured against "suits" seeking damages; or
> b.      if we elect not to assume the investigation and defense in 1.a. above, we will reimburse the insured for reasonable defense costs and expenses incurred with our written consent.  However, such reimbursements excludes:
>
> (1)      office expenses of the insured;
> (2)      salaries and expenses of employees; and
> (3)      general retainer fees of counsel retained by the insured.

(*Id*., VI.1.)  The Policy further provides that:

14

> We will investigate and defend "suits" brought against an insured for a claim or a "suit" that alleges damages from an "incident" not covered under:
>
> a.      "scheduled underlying insurance;" and
> b.      "unscheduled underlying insurance";
>
> but which seeks damages arising out of an "incident" otherwise covered under this policy.  Costs and expenses of such investigation and defense are not subject to the "retained limit."

(*Id.*, VI.2.)

## B.      Duty to Defend Discussion

In Count II, Waste Management seeks a declaration that it does not have any obligation to continue to pay for or provide a defense in *Trenhaile*.  To date, Transcontinental has refused to defend Waste Management in *Trenhaile*, and as a result, Waste Management has incurred over $200,000 in expenses defending itself.

Transcontinental asserts that its duty to defend attaches "only after exhaustion of the limits of underlying insurance."  (Transcontinental's Opp. Mem. at 18.)  Moreover, it states that its duty to defend arises in the same manner as its indemnity obligation and that "the analysis applicable to Transcontinental's indemnity obligations applies to its defense obligations."  (Transcontinental's S.J. Mem. at 24.)  Because it contends that Waste Management's $1 million Reliance limits have not been exhausted, Transcontinental argues that its duty to defend has also not been triggered.

An insurer's duty to defend is distinct from and broader than the duty to indemnify.  *Franklin v. Western Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn. 1998).  An insurer's duty to defend is determined by comparing the allegations in the complaint with the relevant policy language.  *Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 390

15

(Minn. 1979). Here, the Court's analysis is not needed because, as discussed above, it has already determined that Transcontinental's duty to indemnify has been triggered. Therefore, under Transcontinental's own reasoning, its duty to defend was triggered when the $1 million limit was exhausted in the *Ross* settlement. Accordingly, Waste Management is entitled to summary judgment on Count II.

**V.      Waste Management's Unjust Enrichment Claim Must Be Dismissed**

In Count III, Waste Management seeks a declaration, in the form of an equitable unjust enrichment claim, that it is entitled to recover defense costs, including attorney fees, costs, disbursements, and related expenses paid by Waste Management in *Trenhaile* and any costs that Transcontinental was unjustly enriched by failing and refusing to send a claim representative with settlement power to the *Ross* settlement conference.

Under Minnesota law, equitable relief is not available where the rights of the parties are governed by a valid contract. *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981). Here, the duty to defend is governed by the terms of the Policy. Accordingly, as Waste Management concedes, Count III fails and must be dismissed. (*See* Waste Management's Opp. Mem. at 23.) Therefore, Transcontinental is entitled to summary judgment on Count III.

**CONCLUSION**

For the reasons stated above, **IT IS HEREBY ORDERED THAT**:

1.      Waste Management of Minnesota, Inc.'s Motion for Partial Summary Judgment (Doc. No. 10) is **GRANTED**.

16

2.      Transcontinental Insurance Company's Motion for Summary Judgment

(Doc. No. 12) is **GRANTED IN PART** and **DENIED IN PART**.

3.      Transcontinental Insurance Company must indemnify Waste Management

of Minnesota, Inc., in *Chad William Trenhaile v. Waste Management of Minnesota, Inc.*,

Court File No. PI-04-014462.

4.      Waste Management of Minnesota, Inc. has no duty to defend in *Chad*

*William Trenhaile v. Waste Management of Minnesota, Inc.*, Court File

No. PI-04-014462.

5.      Count III is hereby **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  August 23, 2006                    s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           Judge of United States District Court